SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for the Official Committee
of Equity Security Holders

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>    TVIA, INC.,<br><br>              Debtor. | Case No. 08-55860-RLE-11<br><br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR AN ORDER DIRECTING THE CHAPTER 11 TRUSTEE TO PAY ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**<br><br>Date:     June 10, 2009<br>Time:    10:30 a.m.<br>Place:   United States Bankruptcy Court<br>           280 South First Street, Rm 3099<br>           San Jose, California<br>Judge:  Hon. Roger L. Efremsky |

1    The official committee of equity security holders (the "Committee") files this
2 opposition to the motion (the "Motion") by Jefferson T. Stamp ("Stamp") for an order
3 directing the chapter 11 trustee in this case to his bonus claim as an administrative
4 expense.  The Committee has met and conferred with the chapter 11 trustee in this case
5 (the "Trustee") regarding the Motion.  It is anticipated that the Trustee will file a joinder
6 and a declaration supporting this opposition.

## I.

## PRELIMINARY STATEMENT

Stamp is seeking payment of a retention bonus under an employment agreement that was signed post-petition, that is outside of the debtor's ordinary course of business and that the Court never approved.  All the same, Stamp contends that this post-petition employment agreement amended and restated the pre-petition terms of his employment, and entitled him to a significant retention bonus and a raise.  Stamp's fallback position (in the event the Court finds the post-petition employment agreement invalid) is that he is still entitled to severance and bonus payments under prior agreements with the debtor.

The Committee opposes the Motion because (1) the debtor-in-possession never obtained, let alone sought, Court approval of the post-petition employment agreement or payment of retention bonuses, even though clearly constituting a transaction outside the ordinary course of business, and (2) assuming the post-petition employment agreement is invalid, Stamp is not entitled to any payments under his prior agreements with the debtor.

## II.

## INTRODUCTION

At the center of the Motion is an employment agreement (the "Employment Agreement") between Stamp and the debtor.  While the Employment Agreement recites that it is to be effective as of October 13, 2008, the signature blocks show that it was not actually entered into until October 16, 2008 – one day after the filing of this bankruptcy case.

The Employment Agreement purports to amend and restate the pre-petition terms of Stamp's employment in two significant ways. First, the Agreement terminates Stamp's benefits under a severance agreement (the "Severance Agreement") executed in July 2007, and replaces those benefits with a retention bonus equal to $90,000, payable in twelve monthly installments of $7,500 (the "Retention Bonus"), provided Stamp continues to be employed with the debtor. It should be noted that the swapping of severance benefits for a retention bonus was not, however, a substitution of equals. The Severance Agreement provides for the payment of severance benefits only in the event of a Change in Control (as that term is defined in the Severance Agreement). In contrast, The Employment Agreement calls for payment of the full Retention Bonus on an accelerated basis only if Stamp is terminated without "Cause" or if he leaves the debtor for "Good Reason."

Second, the Employment Agreement provides for a significant increase in Stamp's monthly base salary, from $150,000 per year to $180,000 per year (a 20% increase).

At no time during the course of this case did the debtor-in-possession seek Court approval of the Employment Agreement or payment of the Retention Bonus. The Committee, for its part, always took the position that the debtor should not pay the Retention Bonus absent a Court order. This was communicated verbally to the debtor at the outset of the case, and in writing on several occasions via email between counsel. Even before the Committee was appointed in this case, the debtor was likely aware that there might be issues with the Employment Agreement. This would explain why not even a single Retention Bonus payment was made after October 15, 2008 (the "Petition Date"), and why the debtor continued to pay Stamp after the Petition Date at a rate of $150,000 per year for the first four months of the case, as opposed to the increased based salary of $180,000 per year called for under the Employment Agreement. Indeed, even before the Court itself reminded all parties that "no bonuses can be paid without Court approval," the debtor had already committed not to make any bonus payments.

The debtor in possession had nearly six months within which to seek Court approval of the Employment Agreement or payment of the Retention Bonus under

Section 363 of the Bankruptcy Code. It chose not to do so. The Trustee, and not the debtor-in-possession, is now the voice of the estate. Because the Trustee also opposes approval of the Retention Bonus, the Trustee has no intent to seek approval of the Employment Agreement. It is the business judgment of the Trustee that should control.

There are sound policy reasons an agreement entered into outside the ordinary course of business requires Court approval on notice to creditors. It is to give creditors an opportunity to voice their concerns regarding certain transactions that generally raise special concerns. Had a hearing been held on approval of the Retention Bonus at the outset of this case, it is likely that approval would have been denied for much the same reason that the Court denied the debtor's "first day" motion for authority to honor pre-petition employee benefits [Docket #16] – there was no valid business justification for it.

In order for Stamp's request for payment to be granted, the Employment Agreement must first be approved by the Court. That initial step has yet to take place, and with the Trustee now appointed, it likely will never take place, as only the Trustee may seek such approval.

## III.

## DISCUSSION

**A. The Payment of Retention Bonuses are Outside the Ordinary Course of Business**

A trustee or debtor-in-possession can enter into post-petition transactions without providing notice and a hearing if the transaction is in the ordinary course of business.[1] If the transaction "is not in the ordinary course of the debtor's business, notice and hearing or court authorization is required." *In re Media Cent., Inc.*, 115 B.R. 119, 123 (Bankr. E.D. Tenn. 1990).

While neither the Bankruptcy Code nor the legislative history provides a definition of "ordinary course of business," courts have developed two approaches for ascertaining

---

[1] *See* 11 U.S.C. § 363(c)(1).

-3-

Case 08-55860    Doc# 334    Filed: 05/27/09    Entered: 05/27/09 21:21:49    Page 4 of 11

MOTION TO APPOINT TRUSTEE

whether a particular business transaction is in the ordinary course of business: the horizontal dimension test and the vertical dimension test. *Id.* at 124; *see also In re Dant & Russel, Inc.*, 853 F.2d 700, 704 (9th Cir. 1988).

The horizontal dimension test compares the debtor's business with similar businesses and asks "whether the postpetition transaction is of a type that other similar businesses would engage in as ordinary business." *In re Dant & Russell, Inc.*, 853 F.2d at 704. Under this test, a transaction occurs in the ordinary course of business when "there is a showing that the transaction is the sort occurring in the day-to-day operation of the debtor's business, or businesses like it." *U.S. Ex rel. Harrison v. Estate of Deutscher*, 115 B.R. 592 (M.D. Tenn 1990).

The vertical dimension test "views the disputed transaction from the creditor's vantage point and inquires whether the creditor would expect notice and hearing on the contemplated transaction" *In re Media Cent., Inc.*, 115 B.R. at 123; *see also In re Dant & Russell, Inc.*, 853 F.2d 700, 704 (9th Cir. 1988). The court considers the creditor's "reasonable expectations of what transactions the debtor in possession is likely to enter into in the course of its business." *In re James A. Phillips, Inc.*, 29 B.R. at 394. For those "ordinary" transactions that a creditor would reasonably expect the debtor in possession to conduct, a creditor would not expect notice and a hearing. However, a creditor would expect notice and an opportunity to object to a "transaction that is unusual, out of the ordinary, [or] the type of transaction that might be considered controversial or questionable for the debtor to undertake during its chapter 11 case." *In re Media Cent., Inc.*, 115 B.R. at 124.

Even if the debtor-in-possession believes a transaction is beneficial to the estate, and even if that transaction is ultimately beneficial to the estate, "if the transaction is not in the ordinary course of business, creditors still have the right to notice and hearing before the transaction is entered into." *Id*.

While the continued employment and compensation of existing management upon the same terms and conditions as were present pre-petition is presumed to be within the

ordinary course of business, *In re All Seasons Industries. Inc.*, 121 B.R. 822, 825 (Bankr. D. Ind. 1990), Stamp's post-petition employment agreement contained vastly different terms and conditions than his pre-petition employment with debtor. The new Employment Agreement provided Stamp with substantially increased financial benefits, including a $30,000 annual base salary increase and a $90,000 "retention bonus" over the course of one year. This amounts to a 20% raise in salary and a 300% increase over his prior bonus amount. Equally significant, the pre-petition Severance Agreements are triggered only upon a "Change in Control," while the post-petition Employment Agreement is triggered upon a much more generous and lenient standard: termination without Cause or resignation for "Good Reason."

From the perspective of a creditor (or in this case, the Committee), such a sizeable increase in compensation immediately following a bankruptcy petition would be precisely "the type of transaction that might be considered controversial or questionable for the debtor to undertake during its chapter 11 case." *In re Media Cent., Inc.*, 115 B.R. at 124.

The cases of *In re Media Center* and *In re Century Brass Production* are both on point. In *Media Center*, several key employees signed post-petition severance agreements with the chapter 11 debtor. The employees at issue had never previously received severance pay agreements (just as Stamp had never received a sizeable retention bonus in the past). *Id.* at 125. The need for the severance pay agreements there (like the Employment Agreement here) arose not from ordinary business events and occurrences, but rather from developments unique to a chapter 11 case. *Id.* The unique circumstance here being the debtor's recognition that the Severance Agreement would likely be unenforceable in the event of a bankruptcy filing. *See* Resolutions attached to the October 13, 2008 minutes of the debtor's board meeting.[2] In *Media Center*, the bankruptcy court noted that "creditors rightly would have expected to receive notice and an opportunity to

---

[2] The actual board resolution will not be filed because it may contain privileged information.

object before" a decision to award severance payments were made. That conclusion was based on the deep division between the debtor and the creditors during that case (with similar divisions occurring in this case between the debtor and Committee), the fact that no severance pay agreements had previously been issued by the debtor (just as no retention bonuses of this magnitude had previously been paid here), and that the severance agreements placed a significant post-petition contingent liability against the estate (as is the case here).

After finding that the severance agreements at issue in *Media Center* were clearly not transactions in the ordinary course of the debtor's business, the bankruptcy court had no problem concluding that "[a]dministrative claims predicated upon such agreements cannot be allowed." *Id.* at 126.

Similarly, in *Century Brass*, the bankruptcy court considered the validity of an administrative expense claim filed by an employee and vice president of the debtor under a post-petition severance pay agreement. *In re Century Brass Production*, 107 B.R. 8, 9 (Bankr. D. Conn. 1989). Certain parties objected to the employee's claim, asserting that the agreement, not having been noticed to creditors and approved by the Court, was invalid under Section 363 of the Bankruptcy Code, because it was a transaction outside of the ordinary course of business. The severance agreement in *Century Brass* was unique in that no comparable agreement had been entered into during the prior seven years (just as the Employment Agreement here was unique and a departure from the ordinary course). In addition, the payments in *Century Brass* represented a "radical departure" from any prior severance payments (just as Stamp's raise and retention bonus payments represented a radical departure for this debtor). The court in Century Brass expressed "no hesitancy whatsoever" in concluding that the nature of the severance agreements at issue required notice to creditors, a hearing and court approval in order to be effective. *Id.* at 11. As a result, the administrative expense claim of the employee was denied, as it should be in this case as well.

-6-

## B. Only the Debtor-in-Possession or Chapter 11 Trustee May Seek Approval of Transactions Outside of the Ordinary Course of Business

The plain language of Section 363 of the Bankruptcy Code makes clear that only a debtor-in-possession or trustee may seek approval for the use of estate property outsider the ordinary course of business. See 11 U.S.C. § 363(b)(1). Stamp is neither a debtor-in-possession nor a trustee. He has no standing to seek approval of the Employment Agreement, which is a prerequisite to the payment of any Retention Bonus. The debtor-in-possession had an opportunity to exercise its business judgment and seek approval of the Employment Agreement. It chose not to do so. It is the Trustee's business judgment that controls now, and the Trustee does not believe it is necessary or appropriate to seek approval of the Employment Agreement or payment of the Retention Bonus. Under the plain language of Section 363, there is no other method for approval of such a transaction.

## C. Even if Stamp's Prior Agreements are Valid as Contended, the Committee Believes No Payments are Due Under Them

Stamp argues that in the event the Employment Agreement is invalid, he would still be entitled to bonuses in the amount of $25,000 based on earlier promises of the debtor. Stamp goes on to explain that he would be owed (1) $10,000 as an annual bonus under his original offer letter, (2) an additional $15,000 under a bonus plan approved by the debtor's former C.O.O., and (3) the benefit of his original Severance Agreement worth up to six months salary. The Committee believes Stamp is mistaken on all three counts.

The March 2006 offer letter from the debtor to Stamp establishes an annual performance bonus of $10,000.[3] The debtor's books and records show that Stamp received payment of this bonus in December 2006. He did not receive such a payment in 2007 or beyond, but that's because in September 2007 a new bonus plan was approved. The debtor's own books and records show that payments under this new plan were made, and no further bonus payments under the March 2006 offer letter were ever made. So Stamp is

---

[3] *See* Exhibit A to Stamp Declaration in Support of Motion ("Stamp Decl.")

-7-

not entitled to any further payment now under the March 2006 offer letter, as evidenced by the manner the debtor handled its affairs pre-petition.

The September 2007 letter[4] memorializes Stamp's new annual bonus of $30,000, to be paid out in quarterly installments of $7,500. Stamp claims he would still be entitled to $15,000 under this agreement in the event the Employment Agreement is found to be invalid. The Committee disagrees, and believes the appropriate amount is only $5,000 at most. This is because the debtor's books and records show that the $7,500 quarterly bonus payments have been made consistently and in full from September 2007 through the end of 2008. Stamp was not paid his $7,500 bonus at the end of March 2009 (when it would have normally been paid), but he was paid a $2,500 bonus in February 2009, leaving a net amount owing of $5,000. The next quarterly bonus payment under the September 2007 agreement is not yet due, and because such a payment need only be made while Stamp is still with the company, and he has since resigned, no further payment is required.

Stamp also claims that in the event the Employment Agreement is found to be invalid, he would be entitled to the benefit of six months salary under the Severance Agreement. The terms of the Severance Agreement itself make clear, however, that payment is only required upon a "Change in Control" or resignation for "Good Reason." Stamp makes no argument or showing that either triggering event has taken place. Accordingly, he is not entitled to any payments under the Severance Agreement.

As to the $5,000 of net bonus payment that Stamp may be entitled to under the September 2007 letter, the Committee believes that the estate has a valid offset. A review of the debtor's books and records shows that Stamp's semi-monthly pay checks, beginning post-petition on February 13, 2009, were based on an annual rate of $180,000 (i.e., the increased amount called for under the Employment Agreement) and not the annual rate of $150,000, which had served as the basis for Stamp's salary from the Petition Date for most of the case. The difference on a per paycheck basis amounts to $1,250, and depending on

---

[4] *See* Exhibit C, to Stamp Decl.

-8-

how many paychecks Stamp received at this higher rate, the estate may have a full offset to Stamp's claim for a $5,000 bonus, because Stamp's raise was out of the ordinary course of business and was never approved by this Court.

**D.     No Penalties Can Accrue on Amounts not Due and Owing**

At a hearing on March 25, 2009, the Court stated that "no bonuses can be paid without Court approval." The debtor and Committee agreed with that statement. It would be unfair to penalize the estate for failing to pay amounts which require Court approval, especially when approval would most likely have been denied had it been sought.

**E.     The Committee Should be Given an Opportunity to Conduct Discovery on Disputed Questions of Fact**

The Committee believes that the Motion gives rise to disputed questions of fact. For example, Stamp may be an "insider" under the Bankruptcy Code if he is found to be a "person in control of the debtor." The Committee believes that the Court need not reach this question now, because the Employment Agreement and the payment of the Retention Bonus are outside the ordinary course of business and were never approved. But if the Court finds that the determination of whether Stamp is an insider is important, the Committee requests an opportunity to conduct discovery on this issue and to be heard at an evidentiary hearing following such discovery. Similarly, to the extent there are disputed questions of fact regarding the nature of the transactions at issue here, the Committee requests an opportunity to conduct discovery on those issues.

-9-

## IV.
## CONCLUSION

For the reasons set forth above, the Committee requests that the Court deny the Motion.

DATED: May 27, 2009

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By         /s/ Ori Katz
            ORI KATZ

Attorneys for Official Committee of Equity Security Holders